In the Matter of the Accounting of Louise G. Campe et al., as Executors of Samuel Campe, Deceased.

Surrogate's Court, New York County, March 1, 1954.

*Henry Kohn* for executors, petitioners.

*Samuel Weinberg,* special guardian for Mary L. Campe and others, infants, respondents.

*Nathaniel L. Goldstein, Attorney-General (Julius Greenfield* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

COLLINS, S. The accounting executors seek an interpretation of the will insofar as it relates to allocation of estate taxes within that part of the residuary estate from which all taxes are directed to be paid. In particular, the executors ask whether, and to what extent, estate taxes are chargeable against the share of the charitable foundation, which was incorporated as directed in the will.

The general pecuniary legacies are only two in number, each in the sum of $1,000. The widow is to receive all jewelry, personal and household effects, the summer home, and a part of the residuary estate (called Part A), which is to be so constituted as to give the estate the maximum Federal marital deduction. All the rest and remainder of the estate, referred to as Part B of the residue, is divided into sixteen equal parts. Three of these equal parts are bequeathed to the corporate charity. The other thirteen parts are distributed among a number of individuals.

Had the testator said nothing about the source of payment of estate taxes, the statutory rule of equitable proration would apply (Decedent Estate Law, § 124), and under that rule the charity would bear no part of the tax because the charitable exemption allowed in the tax statute enures to its benefit. The will, however, contains this text: "Article XII. I direct that all my estate, legacy, inheritance, transfer and succession taxes of every nature and description whatsoever shall, in the event my wife survives me, be borne by and paid out of Part B of my residuary estate created in Article V hereof." The parties are in disagreement as to the construction of this text. The special guardian of infant legatees contends that article twelfth requires that all estate taxes be paid as an administration expense before division of the residue into the sixteen equal shares, and that each legatee, including the charity, bears the burden proportionately. The charity would thus in effect pay three sixteenths of all estate taxes. The Attorney-General

maintains that the quoted text contains no direction against apportionment *within* the residuary estate, section 124 (Decedent Estate Law) is, therefore, applicable, and under that section the charity must be given the full benefit of any exemption granted by the statute imposing the tax. The charity, he argues, is not required to bear any part of the taxes imposed upon this estate.

The will discloses this testator's understanding of estate tax law and the incidence of such taxes. His directions relating to the incorporation of the charity so closely follow the text of the exemption in the Federal tax law that his intent to take full advantage of the exemption is readily apparent. The gift to his wife is expressed in a way to take full advantage of the Federal marital deduction. Insofar as the Federal estate tax is concerned, the only legacies subject to the tax burden are the two general legacies of $1,000 each and the legacies to individuals in Part B of the residuary. The testator died before the effective date of the New York marital deduction and hence the legacies and the devise to the widow embrace assets taxed by the State. When he turned his attention to adjusting the burden of taxes and limiting the effect of the statutory rule of equitable apportionment, the testator unquestionably understood that by far the greater part of the estate taxes would in any event be borne by and payable out of Part B of the residuary estate and that if the entire tax liability were placed upon Part B, the only parts of the burden shifted would be those relating to the taxes attributable to the two small legacies and the New York tax otherwise chargeable against the widow's share. When he therefore said that " all　*　*　* 　taxes " were to " be borne by and paid out of Part B ", he did not mean that all estate taxes were to be allocated in precisely the same way but merely that the part of the tax burden that would otherwise be borne by other beneficiaries was transferred to and imposed upon Part B. The testator said nothing that could fairly be interpreted as manifesting an intent that the equities then in balance as between the residuary legatees in Part B should be completely altered. Section 124 prescribes the equitable apportionment of estate taxes except where " a testator otherwise directs in his will ". A general direction that all estate taxes be paid out of the residuary estate is not regarded as the equivalent of a direction against proration within the residue nor as a command that taxes be treated as administration expenses. (*Matter of Bayne*, 102 N. Y. S. 2d 525, 529; *Matter of Pratt*, 123 N. Y. S. 2d 425, 427.)

In this will it is particularly apparent that the testator did not mean to countermand the rule within the residue. The basis for the charitable exemption, so carefully observed and preserved in the testamentary directions for chartering the foundation, was not intended to be in part destroyed by other text in the very same instrument. It is hardly reasonable to assume that the testator believed that he could gain the tax exemption and later transfer it to other legatees. The court, therefore, holds that the testator did not intend by article twelfth of the will, to disturb the equitable proration of taxes within the residue. His intent and purpose was merely to transfer to Part B of the residue the portion of the taxes that would otherwise be allocated against the widow and the general legatees.

To say that the statutory rule remains operative within Part B of the residue is not to say, however, that the charity remains wholly free from any part of the tax burden. The statute requires that the tax be allocated among the persons benefited in the proportion that the value of the property received by each bears to the total value of all such property. The testator did not intend to disturb the operation of that rule within the residue. He did, however, intend to transfer to Part B tax burdens that, under the rule of equitable apportionment, would have been borne by others. Thus Part B assumes its own share of the tax under section 124 and it also bears the extra burden which the testator imposed upon it when he relieved others of their prorata share. Under the statutory rule, the individuals benefited under Part B are chargeable with *their own* prorata share of taxes. Nothing in the statute requires them to bear the prorata share of other legatees. Nothing in the text of article twelfth of the will places the shifted tax burdens solely upon the individuals. The testator transferred the burden of taxes from the general legatees and the widow to the entire fund called Part B of the residue, and that deduction operates to reduce all legacies under Part B. Under section 124, the entire charitable exemption enures to the benefit of the charity and no one else. However, under the terms of this will, the legacy to the charity is ascertainable only after deducting from Part B, as directed by the testator, the charges normally allocable against the widow and the general legatees. The tax apportionment statute was not intended to give any legatee something more than the testator gave to it by his will, and hence we may not, under the guise of allocation, change the testator's formula for computing the amount of the legacy.

It will, therefore, be necessary for the executors to make a tentative apportionment of estate taxes under section 124. The taxes that would be allocated against the two general legacies pursuant to section 124 and the State tax that would be apportioned against the widow under that statute shall instead be charged against Part B of the residue in accordance with the mandate of the will and shall be deducted from the whole fund before actual division into the sixteen shares. The charity will thus in effect bear three sixteenths of these transferred taxes. On the other hand, the State and Federal taxes that are apportioned against Part B solely by virtue of section 124 are not affected by the terms of the will and are prorated pursuant to the terms of the statute. Each individual named as a legatee in Part B thus bears *his own* prorata share, and the charity alone gets the benefit of the tax exemption.

The executors will be authorized to retain the sum requested as a reserve for possible tax claims and other contingencies.

Submit decree on notice construing the will and settling the account accordingly.