Foster, J.
The controversy here involved centers around article Eighteenth of the will of Lee Shubert which directs the payment of estate taxes, as follows: “ I direct that all estate, inheritance, succession, transfer or similar taxes on my estate passing under this will shall be paid out of my residuary estate.”
The executors under the will instituted this proceeding in Surrogate’s Court, New York County, seeking determinations “ (a) as to whether or not there has been a direction by the testator which makes inapplicable, either wholly or in part, Section 124 of the Decedent Estate Law, relating to apportionment of estate taxes, (b) if Section 124 is applicable, then as to the manner in which and the persons among whom such taxes should be apportioned, and (c,)- as to the manner in which *467 income of the estate during administration will be held and be distributable by the executors.”
Section 124 of the Decedent Estate Law (L. 1930, ch. 709, as amd. by L. 1940, ch. 829; L. 1950, ch. 822) requires apportionment of Federal and State estate taxes among the legatees and devisees ‘ ‘ in the proportion that the value of the property or interest received by each such person * * # bears to the total value of the property and interest received by all persons benefited ” except where the testator “ otherwise directs in his will” (§ 124, subds. 1, 3, cl. [i]). Clause (ii) of subdivision 3 further provides that “ any exemption or deduction allowed under the law imposing the tax * * * by reason of the charitable purposes of the gift shall inure to the benefit of the person * * * receiving such * * # charitable gift ”.
Section 17-b of the Personal Property Law (L. 1931, ch. 706) provides in relevant part that, in the absence of a direction to the contrary in the will, “ all income from real and personal property earned during the period of administration * * * and not payable to others or otherwise disposed of by the will shall be distributed pro rata as income among the beneficiaries of any trusts created out of the residuary estate of such testator and the other persons entitled to such residuary estate.” Addition of such income to the capital of the residuary estate is forbidden where the whole or part of the residue is bequeathed in trust, or for life or for a term of years, but the said income is to “ be paid ratably to the life beneficiary of a trust, or to the life tenant, or to the absolute residuary legatee, as the case may be.”
All parties and courts below agree that article Eighteenth contains an express direction exonerating all pre-residuary testamentary gifts from the payment of any estate taxes and apportionment thereof, and that all such taxes allocated to pre-residuary gifts are to be borne by the residuary estate and deducted prior to computation of residuary shares and bequests.
The Surrogate held that the will contained no direction against apportionment of estate taxes within the residuary estate with respect to residuary gifts and devises; that estate and death taxes attributable to the residue were to be apportioned between the residuary legatees pursuant to section 124 of the Decedent Estate Law, and that the Sam S. Shubert Founda *468 frión, Inc., a charitable legatee, was entitled to exoneration from such apportionment and to the benefit of its charitable deduction under the State Tax Law and the Internal Revenue Code. He held further that income earned by the estate ‘1 prior to payment of estate tax ” was to be distributed in the proportions stated in the will for division of the residuary estate, that is, one half to Sam S. Shubert Foundation, Inc., and one sixth to each of the three individual income beneficiaries of three additional residual trusts.
Milton Shubert and Sylvia Wolf Golde, executors under the will, trustees, and income beneficiaries respectively of two residuary trusts, together with the special guardian of an infant secondary income beneficiary of two residuary trusts, appealed to the Appellate Division, First Department, contending that the will contained a direction against apportionment within the residue. The Appellate Division unanimously affirmed the decree, except the paragraph thereof concerning distribution of income earned during the administration of the estate. As to that paragraph, the Appellate Division modified on the law, the facts not being in dispute, and directed that the income was to “be distributed in the proportions stated in the will for the division of the residuary estate, viz: one-half of such income to the Sam S. Shubert Foundation and one-sixth of such income to each of the three individual income beneficiaries ”. The words ‘ ‘ prior to payment of estate taxes ’ ’ were deleted from the decree.
The two executors and the special guardian appeal here, as of right, from the order of modification, insofar as it affirmed that portion of the Surrogate’s decree which held that the will contained no direction against intra-residua,ry apportionment, and directed apportionment of estate taxes within the residuary estate. Sam S. Shubert Foundation, Inc., cross-appeals, as of rig’ht, from so much of the order of the Appellate Division as modified the decree of the Surrogate by deleting the words ‘ ‘ prior to payment of estate taxes ’ ’, and directed that income earned by the estate during the entire period of administration be distributed among residuary legatees in proportions stated in the will for division of the residual estate. The remaining petitioners-executors-trustees, Lawrence Shubert Lawrence and William Klein, appear as respondents on both phases of the appeal.
*469 Before proceeding to discussion of the various contentions of the parties herein, a detailed analysis of the relevant portions of Lee Shubert’s will and codicils is indispensable.
Lee Shubert, a resident of New York County, died testate on December 25, 1953. In his will, dated January 27, 1949, as amended by four codicils, he bequeathed various personal effects and some $350,000 to his wife and made certain general bequests to relatives, friends and employees, aggregating approximately $700,000. The bulk of the very substantial estate, in the vicinity of $17,500,000, is disposed of in the residuary provisions of the will found in article Fifteenth as superseded by article Third of the fourth codicil. The residue is bequeathed to four trustees to be divided “ into six (6) equal shares or portions ”. Three of such equal shares, comprising one half of the residuary estate, constitute the principal of a single trust of which the Sam S. Shubert Foundation, Inc., is both remainderman and income beneficiary during the joint lives of the trustees. The remaining three equal shares are set up in three separate trusts with income payable to named individuals (hereinafter designated “individual trusts”), as follows: the income from one such “ equal share or portion ” is payable to testator’s niece, Sylvia Wolf G-olde, for life, and upon her death to her son, Warren Shubert Golde, for life, and upon the death of the survivor of them, the principal is payable to the Sam S. Shubert Foundation, Inc.; the income of the second such “ equal share or portion ” is payable to testator’s nephew, Lawrence Shubert Lawrence, for life, and upon his death to Lawrence Shubert Lawrence, Jr., for life, and, upon the death of the survivor of them, the principal is payable over to the Sam S. Shubert Foundation, Inc.; and the income of the third such “ equal share or portion ” is payable to testator’s nephew, Milton Shubert, for life, and, upon his death, the principal thereof is to be subdivided into two equal parts, the income from one such part payable to Lawrence Shubert Lawrence, Jr., for life, and the income from the other part payable to Warren Shubert Golde, with remainders over to the Sam S. Shubert Foundation, Inc. All estate taxes are made payable out of the residue, pursuant to the provisions of article Eighteenth.
Designated as joint executors and trustees by the testator are his nephews Milton Shubert and Lawrence Shubert Lawrence, *470 Sr., his niece Sylvia Wolf Golde, and his “ friend and counsel ” William Klein. The first three fiduciaries are the same persons who are the primary individual income beneficiaries of the trusts set up in the residuary disposition. Executors and trustees are given broad powers of investment and management of estate assets.
Prior to its amendment by codicil, the will had directed the division of the residue into four equal portions, with income payable to individuals in all cases. Remainders were bequeathed to various private individuals with contingent remainders over to the Foundation. With reference to the trusts created by the original residuary disposition, the testator proclaimed in an original clause of the will: “In creating and establishing the four primary trusts herein provided for, it is my desire that each trust shall contain one quarter in kind of identical properties, to the end that each of said trusts shall have an identical interest in each of the properties, of whatsoever name and nature, which shall constitute the principal of the said trust funds.” The fourth codicil expressly cancelled and annulled the original residuary disposition, and substituted the four trusts described above in detail.
Appellant executors and the special guardian of Warren Shubert Golde contend in this court that the individual beneficiaries of the residuary trusts are the natural objects of the testator’s bounty and that the will should be construed favorably to their interests; that a direction against apportionment within the residuary estate may be culled out of the will when read in its entirety; that a contrary construction would subvert the testator’s intention; that apportionment would completely relieve the Foundation of its share of the residuary estate tax burden and would transfer the entire burden to the individual income beneficiaries; that the value of the three individual trusts would be reduced in substantial amounts, and their total values would be equal to less than 50% of the residuary estate, contrary to the express residuary disposition; and that due to the varying ages and life expectancies of the respective income beneficiaries the value of the three individual trusts would bear unequal shares of the residuary estate tax burden and ultimately would be unequal in value contrary to the express residuary disposition. Appellants Sylvia Wolf Golde and the special *471 guardian also argue that, at the very least, the will contains a direction against apportionment as between the three individual residuary trusts to insure ultimate equality of those trusts.
It should be pointed out that, in the event a direction against apportionment were found here, the estate tax attributable to the residue would be deducted out of the entire residue treated as a unit prior to computation of the “ six equal portions ”. This would result in a loss to the charity of the benefit of its charitable deduction, and, we are told, a much greater estate tax would be paid by the estate as a whole, for the amount of the charitable deduction allowable to the estate would be reduced.
Litigation involving presence or absence of directions against intra-residuary apportionment has been frequent, and certain guiding legal principles have been firmly established. Thus, we have held that, in the absence of a clear, unambiguous direction to the contrary in the will, apportionment pursuant to statute will be directed. There is a strong policy in favor of statutory apportionment, and those controverting its application must bear the burden of proof (Matter of Pepper, 307 N. Y. 242; Matter of Mills, 189 Misc. 136, 141, affd. 272 App. Div. 229, affd. 297 N. Y. 1012). Numerous cases have held that tax clauses similar to Shubert’s do not amount to unambiguous directions against intra-residuary apportionment, and that a general direction that all estate or inheritance taxes be paid out of the residue is not the equivalent of a direction against proration within the residue itself nor a command that taxes be treated as administration expenses (Matter of Mattes, 205 Misc. 1098, affd. 285 App. Div. 867, affd. 309 N. Y. 942; Matter of Paine, 7 Misc 2d 795, affd. 3 A D 2d 736, affd. 3 N Y 2d 741; Matter of Coulter, 11 Misc 2d 851, affd. 4 A D 2d 1019, motion for leave to app. den. 5 A D 2d 814, 4 N Y 2d 676; Matter of Foss, 29 Misc 2d 876; Matter of Williams, 12 Misc 2d 136; Matter of Myers, 7 Misc 2d 664; Matter of Bacon, 6 Misc 2d 243; Matter of Slade, 4 Misc 2d 616; Matter of Parmele, 3 Misc 2d 1011; Matter of Campe, 205 Misc. 699; Matter of Heit, 26 Misc 2d 774; see, also, Matter of Hirsch, 31 Misc 2d 292; Matter of Bayne, 31 Misc 2d 296; Matter of Pratt, 31 Misc 2d 300; Matter of Shanberg, 31 Misc 2d 303; Matter of Hoffman, 31 Misc 2d 299; A. L. R. 2d [1960 Supp. Serv.], p. 2683). Each of these cases holds that the testator’s *472 direction that all estate or transfer taxes (whether on transfers of property passing under the will or otherwise) be paid from the residue is an expression of his intent that pre-residuary gifts be exonerated from tax, and that so much of the tax as is attributable to those bequests be charged against the residuary estate before computation of the residuary shares of the respective legatees. The direction cannot be read as a mandate that the portion of the tax attributable to the residuary assets is not to be apportioned in an equitable manner among the recipients of such residuary gifts (Matter of Coulter, 11 Misc 2d, supra, pp. 852-853; Matter of Smithers, 15 Misc 2d 701, 703). The clause in issue herein fits within the ambit of the cases cited and, standing alone, does not constitute an unambiguous direction.
Appellants argue that Matter of Pepper (307 N. Y. 242, 251, supra) requires that the will be read in its entirety to determine whether or not it contains a direction against apportionment within the residue, and that the clause herein involved, when read in the context of the entire will, clearly constitutes such a direction. As indicating the testator’s intention to direct against apportionment and to maintain equality of shares of the residue after taxes, appellants point to the clause found in the original will (having reference to the original article Fifteenth which disposed of the residuary estate in four equal trusts for the benefit of individual beneficiaries) which provides that ‘‘ each trust shall contain one quarter in kind of identical properties, to the end that each of said trusts shall have an identical interest in each of the properties * * * which shall constitute the principal of the said trust funds ”, and the fourth codicil which directs that the residue be divided into “ six (6) equal shares”, three of such “equal” shares to be used to make up one trust, and the remaining three ‘ ‘ equal ’ ’ shares to be used to make three separate ‘ ‘ equal ’ ’ individual trusts.
Obviously, the proportions provided for would be disrupted by apportionment of taxes within the residue. But this disruption results from the impact of taxes and furnishes no reason for setting aside the statutory mandate calling for apportionment. Division of the residue into equal shares existed in each of these cases: Matter of Mattes (supra); Matter of Paine (supra); Matter of Williams (supra); Matter of Coulter *473 (supra); Matter of Bacon (supra); Matter of Campe (supra); Matter of Pratt (supra), and Matter of Hirsch (supra). In each, apportionment within the residue was directed.
In Mattes (309 N. Y. 942, supra), the residuary estate was made divisible into “ twelve parts as nearly equal as possible Four of these portions then were bequeathed to the husband and the other eight for the benefit of two sons. This ratio was disrupted when statutory apportionment was directed.
In Paine (3 N Y 2d 741, supra), the will provided: “I direct my Executors to divide all of the rest, residue and remainder of my property * * 8 into three equal parts * * 8 One of such equal parts I give * * * in trust * * * to my wife * * 8 and upon the death of my said wife * * 8 to such person or persons 8 * 8 as my said wife shall by last will and testament appoint ’ ’. The trust of one third of the residue thus qualified for the marital deduction. The other equal portions were disposed of in a taxable manner. Despite the words of equality, it was held that the widow’s share was entitled to the full benefit of the marital deduction. Again, the proportions established by the will were upset by the impact of taxes.
Thus, it is clear that provisions for equality, even when repetitious, do not amount to unambiguous directions against apportionment (Matter of Williams, 12 Misc 2d 136, 138, supra ; Matter of Wahr, 370 Pa. 382, 387). “ An equal division of assets * * * does not necessarily mean an equal tax burden. 8 * * As none of the gifts to the charities contributed to the federal tax burden, it is just and equitable that such charitable gifts should be relieved from the payment of any part of such tax * 8 * use of the word ‘ equal ’ does not indicate contrary intent” (Matter of Wahr, supra, p. 387; Matter of Williams, supra, p. 138). The testator is presumed to know the law and the impact of estate taxes. Since he did not expressly make a direction against apportionment within the residuary, he must be presumed to have intended “ gross equality” or equality prior to taxes, rather than “ net equality ” or equality after the tax impact (Jerome v. Jerome, 139 Conn. 285). The loss of “ equality” or the upsetting of proportions set up in the will is a consequence of apportionment whenever a proportion or percentage of the residue is left to an exempt beneficiarv *474 and another proportion or percentage is bequeathed in a taxable manner.
The equality clause providing that “ each trust shall contain one quarter in kind of identical properties ’ ’ relates to the four equal residuary trusts set up in article Fifteenth of the original will. The fourth codicil cancelled and annulled article Fifteenth, and provided for four residuary trusts, one of which was to be made up of 50% of the residue. This, of course, rendered the equality clause meaningless. However, even if the equality clause were relevant as an indication of intent in Lee Shubert’s final testamentary scheme, it would constitute no clear direction against apportionment for the reasons discussed above. Bather, it could, and probably should, be read as a provision for “ gross equality ” or equality of shares prior to the impact of taxes. Such ambiguity rules out a direction against apportionment (Matter of Pepper, supra, p. 250).
It is said that our decision in Matter of Pepper, wherein we found no clear direction, was motivated by a desire to give preference to the widow, the natural object of the testator’s bounty, over the other residuary legatees. To give similar preference to the alleged natural objects of Lee Shubert’s bounty, we are asked to find a direction against intra-residuary apportionment in Shubert’s will to the detriment of the Foundation. The implication is that the court should have one rule for a surviving spouse entitled to the marital deduction (apportionment) and another for a charitable institution (no apportionment). No such distinction is to be found in section 124, and the courts have never indulged in such reasoning (see Matter of Blumenthal, 182 Misc. 137, affd. 267 App. Div. 949, affd. 293 N. Y. 707; Matter of Coulter, supra, p. 853; Matter of Smithers, supra, p. 704; Matter of Williams, supra, pp. 138-139; Matter of Campe, supra, p. 702; Matter of Bacon, supra, p. 243; Matter of Slade, supra, p. 619; Matter of Dettmer, 179 Misc. 844; Matter of Starr, 157 Misc. 103). Furthermore, it is not so clear that the individual income beneficiaries are the natural or intended objects of the bulk of Lee Shubert’s bounty. These individuals are collateral relations. They and their ultimate issue are given no portions of the remainders or principal of the residuary estate under the fourth codicil, as they were under the original will. Their position is thus less favor *475 able than it was under the original article Fifteenth in this respect. Under the final testamentary scheme, it would appear that the Sam S. Shubert Foundation, Inc., was intended to be the chief or favored beneficiary of the residue.
The fact that the residuary estate is bequeathed to the “ Trustees ” to divide into six equal portions is seized upon as a clear, albeit implied, direction against apportionment. This argument is based on the following chain of reasoning and construction of the will: the executors have the duty of paying estate taxes; the residue is bequeathed to the trustees for division into six equal parts; the executors, in the normal chronology of estate administration, turn over the residue to the trustees for division after payment of taxes; the trustees, therefore, are to divide the residue into six portions when they receive it from the executors after payment of taxes.
But there is no provision in the will requiring that the estate taxes attributable to the residuary estate are to be treated as administration expenses to be subtracted initially (cf. Matter of Cromwell, 199 Misc. 143, affd. 278 App. Div. 649, affd. 303 N. Y. 681). Nor is there an express direction that the executors are to pay taxes on the residue prior to distribution to the trustees. Other difficulties inhere in the argument. For example, in this case, the executors and trustees are the same persons. Their powers in each capacity are not distinguished in most instances, but rather the various powers are allocated to “my Executors and Trustees.” No clear-cut direction can be culled out of the bequest to the “ Trustees ” as opposed to the “Executors”. Indeed, in Matter of Pepper (supra) the residue was bequeathed to the testator’s trustee, rather than to the executors, to be divided into certain portions. We found no direction against intra-residuary apportionment inherent in that plan.
What we have said above applies equally to the argument that there should be no apportionment between the three private income trusts. The will contains no clear direction against apportionment within the residue, nor any direction against apportionment within any part or parts of the residue, assuming arguendo that a partial direction is permissible.
In considering the testator’s intention at the time he drafted the tax clause, one further aspect of his original will should be *476 considered. Under the 1949 will, prior to amendment by codicil, the four equal residuary trusts therein set up were fully taxable, since no charitable deduction was allowable for the remainder interests of the Foundation which were contingent upon failure of primary private individual remaindermen (2 Babkin & Johnson, Federal Taxation, § 59-08, subd. [2]).
Under the original scheme, then, taxes would have been paid out of the capital of the trusts, for there is no apportionment of taxes between income beneficiaries and remaindermen of a fully taxable trust (Decedent Estate Law, § 124, subd. 2). Each of the four trusts under the original will thus had the same value for estate tax purposes, and the tax clause, drawn as part of the original will, was meaningless insofar as intra-residuary apportionment was concerned. Whether apportionment was directed or not, the tax burden on each residuary trust would have been the same. The residuary bequests were changed by codicil. Hence it is difficult to perceive how the clause now may be read as an express direction to accomplish something totally unnecessary when it was drafted.
We turn now to the problem of the proper distribution of net income earned by the estate during the period of administration. Pursuant to statute (Personal Property Law, § 17-b) this income is to be divided ‘ ‘ pro rata ” or “ ratably ’ ’ among the income beneficiaries. The question involved is simply this: should this income be distributed, after payment of estate taxes, in proportion to the respective values of the life estates as they exist after payment of taxes, or in proportion to the division of the residue set up in the will prior to consideration of any tax impact? Both lower courts are agreed, of course, that prior to payment of taxes the income earned by estate assets is to be distributed according to the division of the residue set up in the will. The Surrogate, however, limited distribution according to the will provisions to that “ period of administration prior to payment of estate taxes ”. The Appellate Division modified by deleting the words “ prior to the payment of estate taxes ”.
The appellant on this issue is the Sam S. Shubert Foundation, Inc. Obviously, after apportionment and payment of estate taxes within the residue, the exempt Foundation will hold a much greater portion of the remaining residue than the three sixths provided for in the will. We are told that the Foundation *477 will then hold as much as two thirds of the net residue. The Foundation thus contends that its ‘1 pro rata ’ ’ share of estate net income should be determined by comparison of actual values of the various interests during the period the income is earned (see Bogert, The Disposition of Probate Income; Recent Developments, 35 Notre Dame Lawyer, 175-183).
Our statute in no way indicates, however, that distribution of income is to be affected by apportionment of taxes. Indeed, it provides for “ pro rata ” distribution “ Unless otherwise expressly provided by the will ’ ’. The language seems to have reference to the division of the residue provided for in the will. Furthermore, the phraseology of the statute indicates that one ratio for disposition of income was intended “ during the period of administration”. To adopt the argument of the Foundation would be to burden the administrators of the estate with the duty of constantly evaluating the respective interests for purposes of net income distribution. For this reason, the lower courts have held that one ratio was intended during the entire period of administration, under our statute, that being the ratio set up by the testator in his will (Matter of Williams, 12 Misc 2d 136, supra; Matter of Mattes, 12 Misc 2d 502; see, also, Matter of Fairchild, 15 Misc 2d 272).
In Matter of Mattes (12 Misc 2d 502, 507, supra), the Surrogate, discussing the precise issue involved herein, said: “ There is no doubt that the testatrix fixed the various shares of the residuary estate in her will. She gave four twelfths outright to her surviving spouse and one twelfth outright to, and three twelfths in trust for, each of her sons. The decree in the prior construction proceeding directed that after all necessary and proper deductions and charges are made, principal of the residuary estate is to be divided into twelve equal shares and four shares thereof to go to the surviving spouse, subject to his marital deduction, and the remaining eight shares to go to the two sons either outright or in trust, subject to the payment of estate taxes. The fact that the shares of the two sons were subject to the payment of estate taxes and that the share of the surviving spouse qualified for the marital deduction does not disturb the division of the residuary estate into twelfths and each beneficiary is entitled to four shares thereof, as provided by the will. The distribution of income should follow the same *478 equal proportion, because the income toas not subject to any taxes.” (Emphasis supplied.)
In Matter of Williams (12 Misc 2d 136, 139, supra), it was said: “ The only case on this precise question which has come to the court’s attention is Matter of Mattes (12 Misc 2d 502), which held that the entire income was distributable in the fractions designated in the will. In the interest of simplification of accounting procedures, the same method of distribution of income will be adopted here. ’ ’
The avowed purpose of the statute was ‘ ‘ to simplify the administration of estates of decedents and to save expense to beneficiaries ” (Letter dated March 21,1940 from Assemblyman MacNeil Mitchell to Nathan R Sobel, Counsel to Governor. Bill Jacket, L. 1940, ch. 452). If distribution of net income were dependent upon ultimate tax impact on various interests, an executor would have to await the result of litigation involving applicability, for example, of the marital deduction to one of the shares, or of the charitable deduction, prior to distribution of income. So, too, he would have to await outcome of litigation involving presence or absence of a direction against apportionment. And the process would involve constant re-evaluations of interests during the entire period of estate administration. These are but a few administrative problems that would beset estates were we to adopt the Foundation’s arguments. We do not consider the specific statutes of other jurisdictions controlling.
The order appealed from should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order affirmed.