169 N.J. Super. 317 (1979)
404 A.2d 1200
IN THE MATTER OF THE ESTATE OF CATHERINE ALICE RANKIN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted May 29, 1979.
Decided June 27, 1979.
*318 Before Judges FRITZ, BISCHOFF and MORGAN.
Messrs. Kerby, Cooper, Schaul & Garvin, attorneys for appellant Cancer Research Institute, Inc.
*319 Messrs. Haskins, Robottom, Hack, Piro & O'Day attorneys for respondent The Howard Savings Bank.
The opinion of the court was delivered by MORGAN, J.A.D.
Cancer Research Institute, Inc., a residuary beneficiary under the will of Catherine Alice Rankin, appeals from a final judgment denying appellant's exceptions to the account of the estate's executor concerning the manner in which the federal estate tax and the New Jersey transfer inheritance tax were charged against the respective shares of the charitable and noncharitable residuary beneficiaries of decedent's will.
The will of Catherine Alice Rankin, a resident of East Orange, who died on June 2, 1976, was admitted to probate on June 14, 1976 and letters testamentary were issued to The Howard Savings Bank as executor. Their gross estate was valued for federal estate tax purposes at $370,403.74, consisting of nonprobate assets in the amount of $15,862.16, specifically bequeathed tangible personal property valued at $4,892.00, and other probate assets worth $349,649.58. Debts and administration expenses of $38,900.23 are payable, leaving a distributable residue (before estate and inheritance taxes) of $310,749.35.
Article Second of the will requires the payment of all estate and inheritance taxes from the residue in the following words:
SECOND: All estate, inheritance, succession, transfer and legacy taxes payable by reason of my death under the laws of the United States or of any state, district or territory thereof with respect to any property included in my gross estate subject to such taxes, together with interest charges on such taxes, shall be paid from the residue of my Estate, and I hereby waive on behalf of my Estate any right to recover from any person, including any beneficiary or beneficiaries of insurance on my life, all or any part of the taxes, or interest on such taxes, so paid. I direct all the expenses involved in shipping specific items bequeathed be paid as an administration expense from the residue of my estate.
*320 Article Seventh directs a division of the residue into "three (3) equal parts or shares." One of those three equal parts is bequeathed to a group of charities, and this constitutes a deduction for estate and inheritance tax purposes. Cancer Research Institute, Inc. (the appellant herein) is given half of that third, or one-sixth of the residue. The remaining half of that third is allocated to other charities, several of whom have joined in this appeal. The remaining two of the three shares of the residue are bequeathed to decedent's relatives consisting of an uncle and various cousins, and to individuals unrelated to decedent.
The executor's account, challenged by appellant, proposed that all estate and inheritance taxes be deducted from the residue before its division into the three equal shares. As a result of this procedure, approved by the trial court, one-third of all such taxes is to be charged against the charities' share of the residue even though that share generates no portion of the federal and state tax liability. The following is a tabulation of the residue shares calculated in that manner:

 Total Charities' Individuals'
 amount share (1/3) share (2/3)
Residue before taxes $310,749.35 $103,583.12 $207,166.24
Less:
 N.J. Inheritance
 Tax $32,766.28
 Federal Estate
 Tax 45,744.95
 ___________
Total taxes 78,511.23 26,170.41 52,340.82
 ___________ __________ ___________
Net residue $232,238.12 $77,412.71 $154,825.42

This method results in a reduced charitable deduction in the calculation of the amount subject to the federal estate tax by the amount of the tax taken from the charties' share, thus not only decreasing the charities' share of the residue but increasing the total federal estate tax liability.
*321 It was this manner of calculating the estate's tax liability, deducting it from the residue before division of the residue into the shares required by the will, which generated the exceptions filed by the charities thereto, a position supported by the Attorney General of the State of New Jersey on behalf of all charitable beneficiaries. The charities concede that under the express direction of the will all taxes on both probate and nonprobate assets are payable from the residue. They argue, however, that because the will is silent as to the apportionment of taxes between the charities and the individual residuary legatees within the residue, no part of the taxes generated by the individuals' shares of the residue should be borne by them. Under the allocation proposed by the charities, only those taxes attributable to nontestamentary assets are paid from the residue before division. The taxes attributable to the individuals' shares of the residue are then equitably apportioned against those shares rather than being partially shifted to the charities' share of the residue.
By this latter method of allocation, allocating taxes generated by the noncharitable shares of the residuary estate to those shares, the portion of the residue available to charities would be increased from $77,412.71 to $101,973.87. In addition, the federal estate tax charitable deduction would be increased by that much, with the result that the federal estate tax on the taxable estate will be reduced from $45,744.95 to $38,966.07.[1] Under this method, the charities will be paying from the residue their share of the tax attributable to nonresiduary assets: $1,691.33 of New Jersey transfer inheritance tax, and federal estate tax of $3,136.41. The balance of estate and inheritance taxes, generated solely by the individuals' interest in the residue, would be charged against those interests alone.
At the hearing on the charities' exception, the attorney for the executor, also scrivener of the will, advised the court *322 that Article Second of the will which concerns the apportionment of taxes was nothing more than "boiler plate. It's in all the wills that we have drawn in our office." He frankly admitted that Article Second was not expressive of decedent's intent with respect to apportionment; that he didn't know what that intent was, or if she had any, and that in using the language he was simply following a suggestion made at a course for lawyers he had attended. There was no testimony or affidavit material submitted suggesting that testatrix had any intention with respect to the allocation of the tax burden among the charitable and noncharitable residuary legatees.
The trial judge, however, divined the intent of the testatrix regarding this subject from the testamentary direction to divide the residuary estate into three equal shares. From this direction, the judge concluded, in substance, that testatrix intended the charities to bear their share of the taxes generated by the residuary estate because to confine the tax burden to the noncharitable shares would distort that plan of disposition. Final judgment was accordingly entered denying the exceptions to the account. This appeal ensued. We reverse.
At the outset of our consideration of the issues presented, we emphasize what is not in dispute. All parties agree that all estate and inheritance taxes must, in accordance with the express directions of the will, be paid out of the residue. Further, all parties agree that the portion of those taxes attributable to nonresiduary assets must be paid from the residue before the division thereof into three equal shares with the charities bearing their pro rata share thereof. Thus, there is no dispute but that the charities, by this formula, will be bearing their proportionate share of the small tax generated by the nonresiduary and nonprobate gifts. What is at issue is how the tax attributable to the residue is to be allocated among the charitable and noncharitable residuary beneficiaries.
Although Article Second of the will, which deals with payment of estate and inheritance taxes, is neither ambiguous nor self-contradictory as far as it goes, it is nonetheless *323 incomplete. In substance, it provides that taxes on pre-residuary or nonprobate assets included in the "gross estate" for tax purposes be paid from the residue of decedent's probate estate rather than be charged against those pre-residuary and nonprobate assets. It is silent, however, with respect to allocation among charitable and noncharitable residuary beneficiaries, and is silent by indirection in failing to direct whether such taxes are to be calculated before or after division of the residue into the required three shares. Obvious means of doing so would be a direction that the taxes be paid "as an administration expense" or be paid or calculated "before division of the residue." Clearly, we have it from the scrivener himself that Article Second was not intended as the expression of the testatrix' intent with respect to this problem. The language used was included in every will he drafted as a means of avoiding problems concerning tax allocation. Where inserted in wills bequeathing assets to individuals only, particularly where problems associated with the share of a surviving spouse are not involved, the given tax clause would work well and without ambiguity. In this situation, however, involving residuary gifts to charities as well as individuals, it fails to answer the precise question posed herein and the scrivener's advice clearly suggests that testatrix had no intent for us to divine.
Contrary to the trial judge, we do not regard testatrix' testamentary direction to divide the residue into three equal shares as a sufficient manifestation of her intent to calculate the aggregate tax liability before division of the residue. Although the equality which the trial judge was attempting to implement was a post-tax equality, nothing in that direction suggests one way or the other whether testatrix had in mind pre-or post-tax equality. Adherence to her directive by mandating the residue's division before calculation of tax liability leaves unanswered the basic question raised, whether testatrix intended, or would have intended, that the charitable deduction attributable to the charities' share be diminished by allocating against their pro rata share the gross *324 tax liability calculated before the residue's division into shares. Would she have intended to allocate the tax burden so as to minimize the overall tax impact? Or would she have tolerated the relatively small increase in total tax burden in order to insure that, after taxes were paid, the two shares from which the individual, noncharitable beneficiaries would take specified amounts would be exactly double the share made available to the several charities? The will provides no aid in resolving these questions. Nor can we divine what her intent would have been had she been made aware of this problem by reference to what she directed be done with the residue without such awareness. Insofar as the trial court disposition was based upon testatrix' intent so derived, we disagree with it.
Our conclusion in this respect enjoys authoritative support. In Gesner v. Roberts, 48 N.J. 379 (1967), the will divided the residue of testator's estate between his wife, son and daughter "in equal parts share and share alike," an indication of desired "equality" at least as strong as the one encountered in this case. The Appellate Division construed this directive, as did the trial judge in this case, as expressing an intent to have taxes paid before division of the residue and held that the wife's share, the subject of the marital deduction, should contribute to the estate tax. The New Jersey Supreme Court reversed, finding no "express statement in the will," and holding that the shares of the residue were to be calculated before payment of the Federal estate tax.
In In re Ericson's Estate, 74 N.J. 300 (1977), evidence of testator's direction that his estate be divided so as to pass one-third to his wife's family and two-thirds to his own was, implicitly at least, regarded as referring to a pre-tax division.
Ample authority holds that a testamentary direction to divide an estate into equal shares is an inadequate manifestation that there be post-tax equality. Gesner v. Roberts, supra; In re Burnett, 50 N.J. Super. 482 (Cty. Ct. 1958); *325 Case v. Roebling, 42 N.J. Super. 545 (Ch. Div. 1956). The fact that these cases involve a marital deduction is not, as the executor argues, a valid distinguishing feature. That the marital deduction merely postpones the tax whereas the charitable deduction extinguishes all liability therefor, although true, provides no argument in favor of requiring the charitable beneficiaries to bear a portion of the taxes generated by taxable gifts to others.
Similarly, although the marital deduction doubtless concerns a unique beneficiary, a surviving spouse whom a testator must be presumed to favor, we see nothing in such fact which suggests that a testator, without spouse, cannot confer similar favors on the charity of his choice. What was said in In re Shubert's Will, 10 N.Y.2d 461, 225 N.Y.S.2d 13, 180 N.E.2d 410 (Ct. App. 1962), although in a different statutory setting, applies here as well:
* * * The implication is that the court should have one rule for a surviving spouse entitled to the marital deduction (apportionment) and another for a charitable institution (no apportionment). No such distinction is to be found in section 124 [Decedent Estate Law], and the courts have never indulged in such reasoning * * *. Furthermore, it is not so clear that the individual income beneficiaries are the natural or intended objects of the bulk of Lee Shubert's bounty. These individuals are collateral relations. They and their ultimate issue are given no portions of the remainders or principal of the residuary estate under the fourth codicil * * *. Under the final testamentary scheme, it would appear that the Sam S. Shubert Foundation, Inc., was intended to be the chief or favored beneficiary of the residue. [225 N.Y.S.2d at 22, 180 N.E.2d at 416]
Here, too, the individual beneficiaries of the residue are "collateral relations" and persons unrelated to the testatrix, not as clearly the principal objects of testatrix' bounty as would be a spouse or child. We see no reason to favor them over the charities specifically chosen by testatrix as her beneficiaries. We are satisfied that although the reasons behind the marital and charitable deduction differ, such differences are of insufficient significance to ignore the cases *326 involving the marital deduction which hold, in substance, that a testamentary direction for an equal disposition does not necessarily refer to post tax equality. It does not require that the charities bear part of the taxes generated by the share given to the noncharitable beneficiaries.
Hence, we approach the problem presented in the absence of any testamentary direction or extrinsic evidence of testamentary intent that the charities bear a portion of the tax attributable to the individual residuary legatees of the taxable estate. First, we emphasize that one significant consequence of the allocation of taxes in the executor's account is a greater overall tax liability upon the estate. Charging the charities with a portion of the estate and inheritance taxes attributable to the noncharitable residuary shares decreases the amount which qualifies for the federal estate tax charitable deduction. 26 U.S.C.A. § 2055(c). Thus, although the suggested allocation reduces the tax liability on the individual legatees' shares, it results in a higher total tax.
Although the increase in estate taxes is not a great one, somewhere between $7,000 and $8,000, that fact alone should make no real difference. That amount is a function of the relatively modest size of the estate and the amount bequeathed to the charities. Because the increase in tax liability is not great does not mean that it should be ignored unless something in the nature of the noncharitable legacies suggests that the testatrix would have wanted to tolerate a small increase in taxes to insure that such beneficiaries received the maximum amount permitted under the will. We see no such indication in this case. As noted, the noncharitable beneficiaries are 15 in number, many of them unrelated to testatrix, designated to take different fractional shares of the residue, not specified dollar amounts. Nothing in this disposition suggests to us an intention to insure that the shares of these many beneficiaries be maximized at the expense of the charities and the estate as a whole.
The will being silent as to allocation among residuary beneficiaries, and there being nothing in the nature of the *327 gifts to the individual beneficiaries suggesting testatrix's lack of concern as to the overall tax burden on the estate, the allocation is contrary to the presumption under New Jersey law that a testator intends the maximum tax advantage for his estate. Gesner v. Roberts, supra, 48 N.J. at 381; In re Ericson's Estate, supra, 74 N.J. at 309; In re Burnett, supra.
Second, we conclude that where the will is silent, and extrinsic evidence of contrary intent unavailable, public policy suggests that a gift which, because deductible, lessens taxes on the estate as a whole, should not be made to bear any part of the tax attributable to other tax generating parts of the estate. The deduction flowing from a charitable gift should benefit the charitable legatee and not others. N.J.S.A. 3A:25-30 et seq., governing the apportionment of estate taxes between probate and nontestamentary dispositions, although inapplicable to the problem of allocation of taxes among residuary beneficiaries, is, nonetheless, suggestive of this point of view.
In the absence of directions to the contrary, (i) such part of the tax shall be apportioned to each of the transferees as bears the same ratio to the total tax as the ratio which each of the transferees' property included in the gross tax estate bears to the total property entering into the net estate for tax before the specific exemption, and the balance of the tax shall be apportioned to the fiduciary, * * * (ii) any deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent or by reason of the charitable purposes of the gift shall inure to the benefit of the fiduciary or transferee, as the case may be, * * *. [N.J.S.A. 3A:25-33; emphasis supplied]
Third, the charitable deduction was devised to encourage testamentary charitable gifts. In the absence of contrary intent, maximizing the deduction attributable to such gifts is entirely consonant with that legislative purpose.
Finally, there is undeniable equity in requiring the beneficiaries of the taxable estate to bear the taxes attributable to the gifts they receive and in exonerating therefrom recipients *328 of charitable gifts which not only do not generate tax but lessen the tax burden of all. See In re Marks' Estate, 129 N.J. Super. 276 (Cty. Ct. 1974), aff'd o.b. 134 N.J. Super. 510 (App. Div. 1975), certif. den. 68 N.J. 280 (1975); In re Wahlin's Estate, 505 S.W.2d 99 (Mo. Ct. App. 1973). We indulge this equity, of course, only in the absence of contrary testamentary intent derived from the will or from extrinsic evidence of it. And we do so cognizant not only of authority which permits a state to require the recipient of a charitable gift to share in the overall tax burden of the estate, Young Men's Christian Ass'n v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924), but of authority which requires that it do so. See In re Bernays' Estate, 150 Fla. 414, 7 So.2d 444 (Sup. Ct. 1942); Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N.H. 471, 200 A. 786 (Sup. Ct. 1938); Prescott v. St. Luke's Hospital, 280 Mass. 229, 182 N.E. 290 (Sup. Jud. Ct. 1932). We regard our holding as consistent with prior New Jersey law, with the essential purposes of the charitable deduction, and with the general notions of what is fair and just.
We, therefore, reverse the trial court judgment and remand the matter for further proceedings not inconsistent with this opinion.
NOTES
[1] No disagreement with these figures has been expressed.