In the Matter of the Accounting of OGDEN PHIPPS et al., as Executors of OGDEN L. MILLS, Deceased.

Surrogate's Court, New York County, May 29, 1946.

J. *Wesley Seward* and *Leslie D. Dawson* for Ogden Phipps and another, as executors, petitioners, and as trustees of a trust for Dorothy R. Mills and others, respondents.

*Arthur A. Ballantine, John L. Gray, Jr.,* and *Barbara L. Dolgin* for A. Perry Osborn and another, as trustees, respondents.

*Walter G. Dunnington,* special guardian for John R. Fell, Jr., and others, infants, and for George W. Sands, a person in military service, respondents.

*Gertrude Glennon,* special guardian for Elizabeth H. Fell and another, infants, and for Philip S. P. Fell, a person in military service, respondents.

*Nathaniel L. Goldstein, Attorney-General* (*Louis Winer* of counsel), for Superintendent of King's Park State Hospital on behalf of Elizabeth Cashin, an incompetent, respondent.

*Windsor B. Putnam* for New York Trust Company, as successor trustee of trust created by George W. Sands, respondent.

*James L. Duncanson,* attorney designated by Alien Property Custodian to represent Mary M. Rossi, a person within enemy designated territory, respondent.

*Ernest M. Strong* for Ogden Phipps and another as successor trustees of a trust created by Ogden L. Mills, respondents.

DELEHANTY, S. This is the final accounting of the executors. The apportionment of the Federal and New York estate taxes is the only matter in issue.

Deceased died on October 11, 1937, leaving a last will dated August 6, 1935, and a codicil dated June 24, 1937. Paragraph eleventh of the will states: " I direct that all estate, inheritance, transfer and succession taxes imposed upon my estate

or any part thereof, or the transfer thereof or any right of succession thereto, be paid out of my general estate.''

In the Federal estate tax proceedings the net taxable estate was valued at $8,208,947.81. The total Federal estate tax was assessed at $2,984,775.55.

On April 30, 1932, deceased created a trust for the benefit of his wife for life with remainders over. Among other things the trust instrument provided: '' * * * if my said wife shall die during my lifetime, the trust hereby created shall immediately cease and determine and the principal of the trust shall forthwith revert to and belong to me absolutely.'' The Commissioner of Internal Revenue included in the gross tax estate the entire value — $515,753.01 — of the principal of this trust, acting under the decision in *Helvering* v. *Hallock* (309 U. S. 106), decided in January, 1940. The executors filed a protest, contending that under the decision in the *Hallock* case (*supra*) only the value of the remainder interest in the trust principal after the death of Mrs. Mills was subject to tax. Thereafter the commissioner determined that there should be included in the gross tax estate only the value of such remainder, namely, $230,318.28.

The executors have apportioned 2.8057% of the total Federal estate tax or $83,743.85 against this trust remainder of $230,318.28. The trustees of this 1932 trust object to the proposed allocation, contending that paragraph eleventh of the will contains an absolute direction against such apportionment and an absolute direction that all estate, inheritance, etc., taxes imposed because of the inclusion of the trust in the gross tax estate shall be paid out of the residuary estate.

On August 2, 1935, just four days prior to the execution of his will, deceased created a second trust for the benefit of his wife for life with remainders over. There was no express reservation of any reversionary interest but there was a remote possibility that deceased would survive all the named remaindermen with the result that by operation of law the corpus of the trust would revert to him. The securities in this trust had a value at deceased's death of $350,000. The Commissioner of Internal Revenue — again on the authority of *Helvering* v. *Hallock* (*supra*) — included in the gross estate the entire value of the principal of this trust after the death of Mrs. Mills and asserted a deficiency in tax of $66,998.62. Following a protest the commissioner included in the gross tax estate only $44,800 of the principal of this trust and assessed on account thereof a deficiency in tax of $20,000.

The executors have apportioned .5457% of the total Federal estate tax or $16,287.92 against this trust remainder of $44,800. The trustees of this trust object to the proposed allocation. They contend that paragraph eleventh of the will provides against apportionment of estate taxes.

A special guardian for certain infants also objects to the allocation of the tax in respect of both trust funds and relies upon paragraph eleventh of the will.

In the New York estate tax proceedings the net taxable estate was valued at $8,719,746.63 and a tax was assessed in the sum of $1,095,653.12. The New York authorities did not include in the gross tax estate any part of the corpus of the 1935 trust. They did include in the gross tax estate the value at the decedent's death of the remainder interest of the 1932 trust and in so doing relied on the rule laid down in June, 1941, in *Matter of Pratt* (262 App. Div. 240, affd. 289 N. Y. 621). The value of the remainder interest so included in the gross tax estate was $248,650. In the New York gross tax estate there was also included part of the corpus of a trust created on July 5, 1929, by George Winthrop Sands, a ward of deceased, as settlor, of which trust deceased was the trustee. Under this trust instrument income was payable to the settlor for life and the remainder passed as he should by will appoint. In default of appointment, the remainder would pass to others specified in the instrument. Deceased was in no event entitled to take either income or principal but had the limited right, as trustee only, to terminate the trust as to all or any part of the principal, but so much of the principal as was affected by any exercise of such power would become payable to the settlor, Sands. In 1930 deceased made a gift to the principal of the trust of securities which at the date of his death were of the value of $12,625. The value of the remainder interest in this addition to the trust was fixed at $3,938 and such amount was included in the gross tax estate. The Federal authorities did not include any part of the Sands trust in the gross tax estate. Its inclusion in the New York tax estate is said to have been based on subdivision 4 of section 249-r of the Tax Law. But that section applies only when it is sought to include in the tax estate the corpus of a trust of which the deceased is settlor and has retained some power to alter, amend or revoke. Here deceased was not the settlor and although he had power to revoke the trust, such power was exercisable only as trustee. The fact that deceased had contributed funds to the trust corpus does

not bring the statute into operation. He had made an absolute gift to the fund and had no interest in it when he died.

The executors propose to allocate 2.853% or $31,574.40 against the 1932 trust and .046% or $509.09 against the 1929 Sands trust. Objection to any proration against the 1932 trust is made by the trustees of that trust and by the special guardian already mentioned in the comment on the Federal tax. The trustee of the 1929 trust objects to any proration against it. A special guardian for infants who take contingent interests under the will joins with the executors in urging that all the trusts actually taxed must bear a proportionate share of each tax based upon the inclusion of the respective fund in either tax estate. Representing also a person in military service who is a contingent income beneficiary under paragraph twelfth of the will this special guardian urges that the taxes be apportioned against the trusts.

Section 124 of the Decedent Estate Law requires apportionment against the *inter vivos* trusts. This section commands proration " except in a case where a testator otherwise directs in his will ". The direction against apportionment must be a clear direction. Lacking clarity in the language of the will the statute makes the rule and apportionment should be directed. That the direction against apportionment must be a " clear " direction is not a new concept. As the Court of Appeals noted in *Matter of Duryea* (277 N. Y. 310), this rule of clear expression was required in respect of transfers under the transfer tax law. As the court said (p. 316): " * * * a testator may by *clearly expressed intention,* charge his estate with the payment of transfer estate or succession taxes on gifts or devises made by him." (Emphasis supplied.) And in *Jackson* v. *Tailer* (41 Misc. 36, affd. 96 App. Div. 625, affd. 184 N. Y. 603) it was said that a testator may " by *apt* words, direct that the tax upon a particular legacy or class of legacies should be paid out of the residuary estate * * *." (Emphasis supplied.)

The reason for this rule requiring clear direction is found in the fact that the effect of such direction by a testator is " to increase the legacy by the amount of the tax " (*Matter of Gihon,* 169 N. Y. 443, 447). This idea is well stated in *Sherman* v. *Moore* (89 Conn. 190, 193) where the court said: " As the practical effect of a provision making a legacy or devise free of tax is to increase the gift, and to shift the burden which the legacy or devise would ordinarily bear on to the shoulders of the residuary beneficiaries, the intent of the testator to make

such a gift will not be drawn from vague or uncertain language. *It must clearly appear.*" (Emphasis supplied.)

The legislative history of section 124 of Decedent Estate Law leaves no room for doubt that the statute makes apportionment of estate taxes the rule and permits deviation from the rule only if there be *direction* to the contrary. The verb " direct " is defined: " to instruct authoritatively " and " to * * * order with authority " (Merriam Webster New International Dictionary). In Funk & Wagnalls' New Standard Dictionary it is defined: " To instruct or guide with authority; order; command." This dictionary gives .the synonyms for " direct " as " dictate " and " govern ". What the statute requires is *certainty* of expression. It is not enough that there be speculation as to what deceased may have meant. Those who resist apportionment must be able to point to affirmative language in the will *directing* that taxes be· *not* apportioned. In case of doubt as to what the will means on the subject of taxes the statutory direction to apportion is absolute.

The Commission to Investigate Defects in the Law of Estates said of this proposed new section: " It provides for the first time in this State a statutory method of equitably apportioning the estate tax (both Federal and State), as against the respective benefits derived by the various persons interested in the estate. The great complaint against the estate tax has been that this burden falls upon the residuary legatees, who are, under most wills, the widow, children, or nearer or more dependent relatives. Cases have arisen where the residue has been greatly depleted by the imposition of the Federal Estate tax. Moreover, the residuary legatee under the present system is compelled not only to pay the tax assessed against the transfers passing by operation of the will, but is also compelled to pay the tax on other transfers to persons not participating in the decedent's estate. Thus, if a gift in contemplation of death has been made, or a transfer under an *inter vivos* trust becomes effective by reason of the death of the settlor, the tax on all such transfers is imposed upon the residuary legatees. This new law provides for an equitable apportionment of all these transfers by the surrogate in an accounting or other appropriate proceeding on notice to all the parties. *Thus the donee of a gift taking effect at death will be compelled to bear his fair share of the tax upon the amount of the property which he derived* and which was included in the general estate subjected to taxation. It is believed that this plan will present a

fair, just and equitable method of the allocation of the estate tax, both Federal and State.'' (Emphasis supplied. Combined Reports of the Decedent Estate Commission, Reprint, p. 309–310.)

When section 124 of Decedent Estate Law was proposed for enactment by the commission a legislative note was appended. The note recites the evils which the legislation was intended to remedy and said that the new enactment would effect '' an equitable apportionment of the estate taxes — both Federal and State — *as against all transfers of property included in the gross estate.''*· (Emphasis supplied.) It was in the light of that declaration of the commission's purpose that the Legislature passed the section. Its terms should be applied in their plain meaning. The question of allocation should not be approached as would a construction question where at all events the meaning of the text must be determined from the content of the will. In a tax allocation problem the text of the will is to be scanned only to see if there is clear direction *not* to apportion; and if such *explicit* direction is not found, *construction of text ceases because the statute states the rule.* As was said by a distinguished Judge: '' A provision in a will that all taxes be paid out of the residuary or general estate *applies only to property passing under the will unless it specifically refers to other property, and has no effect upon inter vivos dispositions, which for one reason or another are drawn into the gross estate for tax purposes.''* (*Chase National Bank* v. *Tomagno,* 172 Misc. 63, 65–66. Emphasis supplied.)

At best the language of deceased can be said to be obscure. Nowhere does he say that apportionment of taxes is *not* to be made. Nowhere does he refer specifically to any *inter vivos* transaction. The arguments based upon deceased's supposed knowledge of tax law and its application is an argument which defeats itself when examined. It is suggested that the text of the will quoted at the beginning of this decision was drawn with the design of freeing the *inter vivos* trust principals from any contribution to the tax. If it be conceded — as argued — that deceased was skilled in tax law, how simple would have been his course had he desired to exonerate the outside funds. Assuming his skill, he knew that he need only *direct* that no apportionment of taxes was to be made. Deceased's will is dated 1935 and his codicil in the year of his death, 1937. By 1937 there had arisen scores of questions about tax apportionment. A few instances are *Matter of Caswell* (239 App. Div.

695 [1934]), *Matter of Murdoch* (142 Misc. 186 [1931]), *Matter of Randell* (147 Misc. 358 [1933]), *Matter of Adler* (151 Misc. 338 [1934]), *Matter of Stern* (153 Misc. 442 [1934]), *Matter of Starr* (157 Misc. 103 [1935]), *Matter of Scott* (158 Misc. 481 [1936]) and *Matter of Rogers* (159 Misc. 86 [1936], affd. 249 App. Div. 238 [1936]). If deceased had the special knowledge of tax law which is argued for he knew that his text did not contain the *direction* against apportionment which the statute and the cases required for exoneration. Deceased could be charged of course only with knowledge of such tax law as had been declared. At the time he created the trusts in 1932 and 1935 he observed scrupulously all precautions then deemed necessary to make the transfers so absolute and complete that they could not be included as taxable under the law as it was then understood. It was not until *Helvering* v. *Hallock* (309 U. S. 106, *supra*) was decided in 1940 and *Matter of Pratt* (262 App. Div. 240, *supra*) was affirmed in 1942 that the taxability of these trust funds was established. If then deceased was expert in tax law when he drew his testament *he was not making any provision for the trusts at all* because as he conceived the law they were not taxable at his death.

If one undertakes to explore the supposed prescience of deceased somewhat absurd results are reached. Did deceased know when he drew his will that the corpus of the 1935 trust would enter into his Federal tax estate but not into his New York State tax estate? Did he know that the donation which he made to the Sands trust in 1930 would be included in his New York State tax estate but not in his Federal tax estate? Did he know that under now current Federal decisions it may well be that the 1935 trust corpus was not properly included in his Federal tax estate? Of course he was bound by the law as it actually existed just as is every person who lives in an ordered community but the argument made is that deceased had special knowledge of tax decisions and of course that knowledge could relate only to such decisions as were extant while he lived. He knew that the courts had consistently enforced the provisions both of *inter vivos* agreements and of wills respecting the impact of taxes. While he did not know about the 1940 amendment to section 124 of the Decedent Estate Law (L. 1940, ch. 829, § 13) he must be assumed to know that such amendment merely recognized the fact that apportionment could be directed by any effective instrument, whether will or otherwise. If he had the special knowledge ascribed to him

he knew the vagaries of taxing authorities and the utter lack of logic which at times characterized their actions. To the ordinary mind it seems an incongruity that this testator should be deemed to have intended to penalize his true estate beneficiaries by the tax burden on the Sands trust to which he made the outright gift of 1930. If he wanted to make his true estate beneficiaries pay taxes on funds not passing by his will he need only have followed section 124 of the Decedent Estate Law and have given a direction against tax apportionment. He made no direction which meets the statutory test and so apportionment must be made and the tax burden put ratably on the taxed property. "The court begins its allocation task at the point where the taxing authorities terminate their work of fixation of gross tax. The court is not a reviewing body. It may not say that something else should have been done by the taxing authorities that in fact was done. It takes the accomplished fact of taxation and then allocates the burden on the basis of actuality of tax." (*Matter of Kaufman*, 170 Misc. 436, 445.)

Submit, on notice, decree providing for the apportionment of estate taxes as herein directed and otherwise settling the account.