■ In the Matter of the Estate of DAVID JARET, Deceased. MILDRED JARET et al., as Executors of DAVID JARET, Deceased, et al., Appellants; OLIVE JENNISON, Respondent.— In a proceeding to judicially settle the account of the executors of a decedent's estate, in which Olive Jennison, a legatee-devisee, filed certain objections to the account, by reason of which the will was required to be judicially construed, Mildred Jaret and Herman B. Forman, as executors, and the said Forman and Viola Rabke, individually as legatees, appeal from a decree of the Surrogate's Court, Kings County, entered October 21, 1964 upon the court's opinion and decision, which sustained such objections and which construed the will so as to exonerate from the burden of all estate taxes those beneficiaries of gifts made under the provisions of the will prior to Article "Ninth." Decree affirmed upon the opinion of the learned Surrogate (44 Misc 2d 262), with costs to all parties filing separate briefs, payable out of the estate. Ughetta, Acting P. J., Christ and Hill, JJ., concur; Rabin and Benjamin, JJ., dissent and vote to reverse the decree, with the following memorandum: The central issue involved here is whether the decedent's will contained a clear and unambiguous direction with regard to the apportionment of taxes. Article "First" of the will, dated June 24, 1954, provided for the payment of debts and funeral expenses. Article "Second" made certain bequests of personal effects to the widow. In Article "Third", testator created a marital trust for his widow to the extent of the maximum marital deduction. The "Fourth" Article of the will provided that all taxes assessed by reason of the testator's death "shall be paid by my Executor out of the residue after all of the foregoing provisions of this Will have been satisfied". Article "Fifth" of the will provided that "The rest, residue and remainder of my estate * * * shall be disposed of in the manner set forth in the following articles." The following Articles "Sixth", "Seventh" and "Eighth" contained specific bequests. Article "Ninth" divided the "balance of my estate then remaining" into seven equal parts. Thereafter, the testator executed three codicils to the will. Their net effect was to eliminate the specific bequest in Article "Seventh"; divide the balance of the estate under Article "Ninth" into three equal parts; and change the marital trust created by Article "Third" into an outright gift. In altering the nature of the marital gift, the third codicil directed, *inter alia,* that: "The bequest of one-half of my estate to my beloved wife shall be calculated before Federal and State inheritance and estate taxes, it being my intention that such taxes pursuant to Article 'Fourth' of my Will shall be paid out of the balance of my estate." The Surrogate sustained objections by a beneficiary under Articles "Sixth" and "Ninth" to the final account of proceedings. The will and codicils were construed to have mandated the payment of taxes out of the "true residuary of the estate under Article Ninth rather than the artificial residuary clause set forth in Article Fifth." The specific legacy given to the objectant by Article "Sixth" was thereby exonerated from any tax burden. The will's Article "Fourth", by directing the payment of estate taxes out of the residue after the satisfaction of the first three articles; and the will's Article "Fifth", which refers to the bequests then following as the "rest, residue and remainder of my estate", both evince a testamentary

desire to exonerate the foregoing gifts to the widow from tax, while apportioning the tax among those beneficiaries thereafter named. The language in the third and last codicil, directing that the widow's share shall be calculated before taxes pursuant to Article " Fourth " in order that the taxes be paid out of the balance of the estate, also reveals a desire to exonerate only the widow's share from the payment of taxes. The statute (Decedent Estate Law, § 124, subd. 3) provides that in the absence of directions to the contrary, apportionment of estate taxes shall be made among all persons benefited in proportion to the value of their interest. This statute embodies a strong public policy. In the absence of clear and unambiguous directions to the contrary, it must be applied (*Matter of Durkee*, 183 Misc. 382; *Matter of Mills*, 189 Misc. 136, affd. 272 App. Div. 229, affd. 297 N. Y. 1012; *Matter of Ballou*, 206 Misc. 442; *Matter of Bros*, 11 Misc 2d 943, affd. 7 A D 2d 978). The Surrogate held, however, that " as a matter of construction of a will, courts will not strain to defeat a testator's intention by undue deference to a rule of statutory construction." Yet, as noted, there are many indications that testator intended the gift to objectant under Article " Sixth" of the will to be subject to tax. Additionally, objectant received property in the value of $127,428.11 as her specific legacy under Article " Sixth ", together with the sum of $34,947.02 as her share under Article " Ninth." Decedent's sister, Viola Rabke, received $34,947.03 as her share under the " Ninth" Article. If the Federal and State estate taxes are distributed in accordance with the statutory formula or by satisfying them out of all interests, after satisfying the widow's legacy, objectant would receive $127,283.97 from the estate after taxes, while Viola would receive $27,579.63. If, on the other hand, these taxes are borne by the beneficiaries under Article " Ninth," the objectant would receive $144,872.85 from the estate after taxes, while Viola's share would come to $17,489.75. It is not at all clear and unambiguous that the testator intended that taxes in effect should reduce Viola's share by one half when her total share only came to approximately 7% of the estate, while those same taxes amounted to approximately 11% of objectant's one-third interest in the estate. But, as the Court of Appeals has said in this regard (*Matter of Pepper*, 307 N. Y. 242, 250–251): " However, in deciding this case we need not go that far. We need only hold that it *does not contain a clear and unambiguous direction to that effect*. There is a strong policy in favor of statutory apportionment. * * * As was said in *Matter of Mills* (189 Misc. 136, 141, affd. 272 App. Div. 229, affd. 297 N. Y. 1012, *supra*): ' In case of doubt as to what the will means on the subject of taxes the statutory direction to apportion is absolute.' In our opinion the executor has shown the existence of an ambiguity as to what the will means on the subject of taxes." (Emphasis in original.) The Surrogate, however, reasoned that the tax exoneration clause (Article " Fourth ") must have been inserted in the will for a reason. Since the widow's share under Article " Third " was exempt from tax in all events as coming within the marital deduction, he concluded that therefore the intent of the testator had been to exonerate the legatees under Articles " Sixth " through " Eighth " of taxes. This reasoning fails for a number of reasons. The testator could have inserted Article " Fourth " to insure that the widow's share would be free of tax even if at some future date there was a change in the law with reference to the maximum marital deduction. Article " Fourth " also could well have been intended to ensure that the Article " Second " gifts to the wife, which exceeded the maximum marital deduction, were free of tax. Further, an adoption of the Surrogate's reasoning would require us to graft onto the " Fourth " Article of the will, after the exemption of the " foregoing provisions " from taxes, the words " and the Sixth, Seventh

and Eighth Articles of this Will." This, we may not do. The very fact that the Surrogate found it necessary to construe the meaning of a tax exoneration clause which he felt was otherwise meaningless creates a doubt which makes absolute the application of the statutory formula (*Matter of Pepper, supra; Matter of Shubert,* 10 N Y 2d 461).