In the Matter of JANE E. C. McKINNEY, Deceased. BANK OF NEW YORK et al., Appellants; ST. AGNES HOSPITAL et al., Respondents.

Second Department, May 21, 1984

**APPEARANCES OF COUNSEL**

*Bleakley Schmidt, P. C. (William F. Harrington* and *Raymond M. Planell* of counsel), for appellants.

*McCarthy, Fingar, Donovan, Drazen & Smith (John G. McQuaid* and *Frank Streng* of counsel), for St. Agnes Hospital, respondent.

*Robert Abrams, Attorney-General (Allan E. Kirstein* and *Jonathan J. Silbermann* of counsel), respondent *pro se.*

BROWN, J.

The issue for our determination on this appeal is whether the tax exoneration clause contained in the will of Jane Eloise Cecilia McKinney exonerates the property passing out of the residuary estate from the tax apportionment scheme of EPTL 2-1.8 (subds [a], [c]) thereby permitting all of the estate tax, including the tax imposed on the residuary, to be paid out of the residuary. We conclude that, under the circumstances of this case, apportionment of the residuary estate is required since there is no clear and unambiguous direction to the contrary in the will.

Jane Eloise Cecilia McKinney died on October 4, 1979, leaving an estate valued at $4,704,773.96. In her will dated August 1, 1975, Ms. McKinney nominated petitioners Dennis L. O'Connor, Dennis T. Doyle and The County Trust Company (which, apparently, was replaced by petitioner The Bank of New York), as her executors, and, in addition, provided for payment of her debts, obligations and administration and funeral expenses. The dispute before us concerns the language of article THIRD of the will, the tax exoneration clause, and article SEVENTH of the will, the residuary clause. Article THIRD reads as follows: "THIRD: I direct that all my estate, transfer, inheritance and like taxes, including interest and penalties, if any, imposed or assessed by the United States or New York State Governments, or any duly constituted authority, upon or with respect to property passing under this my Will, and any property passing outside of my Will, which is required to be included in the taxable estate, including that property passing by the terms of a trust created by me this date, be paid out of my testamentary residuary estate herein and that no portion thereof shall be apportioned to or collected from the specific bequests contained in this Will or from distributions made from said trust".

Article SEVENTH reads as follows:

"SEVENTH: After payment of all expenses, taxes and specific bequests as aforesaid, all of the rest, residue and remainder of my property * * * I hereby give, devise and bequeath as follows:

"(a) Seventy (70%) per cent. thereof to ST. AGNES HOSPITAL, White Plains, New York, the same to be used by said hospital as its directors shall see fit for any and all the purposes for which the said hospital was organized.

"(b) Thirty (30%) per cent. thereof to Dennis L. O'Connor".

Articles FOURTH, FIFTH and SIXTH of the will contain various preresiduary bequests. Additionally, in 1972, the testatrix created a revocable *inter vivos* trust which was amended on the date of the execution of the will to make the shares and trust remainderman of the trust the same as that of the residuary estate to wit, 70% of the trust proceeds to St. Agnes Hospital and 30% to Dennis L. O'Connor.*

The executors paid $751,276.06 in Federal estate taxes and $174,281.38 in New York estate taxes in accordance with their interpretation of the tax exoneration clause that all of the estate taxes on the taxable estate, including the residuary, should be paid "off the top" from the residuary prior to the division of the residuary. They then submitted a final account and petitioned the Surrogate's Court for a judicial settlement of their account. Respondents objected to the computation and payment of the estate taxes prior to the division of the residuary estate on the ground that the tax exoneration clause in article THIRD of the will applied only to the preresiduary bequests and the property passing through the *inter vivos* trust and that only the taxes on that property should have been paid "off the top" out of the residuary estate. Respondents argued that the tax on the residuary should have been apportioned against the individual legatee, Dennis O'Connor, and deducted from his share after division of the residuary pursuant to article SEVENTH of the will, and that by paying all the estate taxes out of the residuary prior to dividing the residuary, St. Agnes Hospital had been denied the full benefit of the charitable deduction to which it was entitled as a residuary

---

* Dennis O'Connor renounced half of his interest in the residuary estate in favor of his children, per stirpes. For our purposes though, we consider Dennis O'Connor to be the beneficiary of 30% of the residuary estate. Further, it is to be noted that it is undisputed that article THIRD of the will exonerates both the preresiduary bequests and the *inter vivos* trust from statutory tax apportionment and that the taxes thereon are to be paid out of the residuary estate.

legatee pursuant to the terms of the will and EPTL 2-1.8 (subd [c], par [2]). According to respondents' calculations, failure to comply with those provisions had reduced St. Agnes Hospital's share of the residue by $513,273.

Surrogate Brewster sustained respondents' objections (*Matter of McKinney,* 117 Misc 2d 173). He initially found that the testatrix, by providing 70% of both the residuary estate and the *inter vivos* trust for the benefit of respondent St. Agnes Hospital, evinced a clear charitable intent which "bespeaks a primary charitable gift, undiminished by the impact of taxes and taking full advantage of the taxable deductions allowed by law" (*Matter of McKinney, supra,* p 176). The Surrogate then found that the language of article SEVENTH of the will, i.e., "[a]fter payment of all expenses, taxes and specific bequests *as aforesaid*" (emphasis added), created an ambiguity which mandated statutory apportionment pursuant to EPTL 2-1.8. He stated (*supra,* p 176): "Article THIRD of the will, standing alone, would provide a persuasive argument that no tax apportionment was intended, but considering that article SEVENTH of the will states that 'after payment of all expenses, taxes and specific bequests as aforesaid,' it appears to the court that the words 'as aforesaid' could relate back to mean that the tax exemption was spelled out for the *inter vivos* trust as stated in article THIRD and the preresiduary bequests as set forth in articles FOURTH, FIFTH and SIXTH. In any event, the words, 'as aforesaid' create an ambiguity which can only be resolved by application of the statute (EPTL 2-1.8) and directing apportionment within the residuary."

In addition, the Surrogate concluded (*supra,* p 177) that the fact that the *inter vivos* trust was exonerated from apportionment while the residuary was not, was not an incongruous result. "The gift to the charity does not contribute to the tax burden and thus it is just and equitable that such charitable gift be relieved from payment of any part of the tax. 'The testator is presumed to know the law and the impact of estate taxes. Since [s]he did not expressly make a direction against apportionment within the residuary [s]he must be presumed to have intended "gross equality" or equality prior to taxes, rather than "net equality" or equality after tax impact (*Jerome* v. *Jerome,* 139 Conn.

285). The loss of "equality" or the upsetting of proportions set up in the will is a consequence of apportionment whenever a proportion or percentage of the residue is left to an exempt beneficiary and another proportion or percentage is bequeathed in a taxable manner.' (*Matter of Shubert,* [10 NY2d 461], pp 473-474.)"

On January 28, 1983, Surrogate Brewster signed an intermediate decree which, *inter alia,* sustained respondents' objection to petitioners' final account, ordered that the schedules of the account be amended to show the correct computation and apportionment of estate taxes and directed petitioners to make application to recover estate taxes paid in excess of the amount due if a proper charitable deduction had been taken. We affirm.

The requirement that estate taxes be apportioned among the beneficiaries of the estate in the proportion that the value of the property received by them bears to the total value of all property received by all of the beneficiaries of the estate, unless otherwise directed in the will or a non-testamentary instrument, is set forth in EPTL 2-1.8 (subd [a], subd [c], par [1]) as follows:

"(a) Whenever it appears in any appropriate action or proceeding that a fiduciary has paid or may be required to pay an estate or other death tax, under the law of this state or of any other jurisdiction, with respect to any property required to be included in the gross tax estate of a decedent under the provisions of any such law (hereinafter called 'the tax'), the amount of the tax, except in a case where a testator otherwise directs in his will, and except where by any instrument other than a will (hereinafter called a 'non-testamentary instrument') direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such non-testamentary instrument, shall be equitably apportioned among the persons interested in the gross tax estate, whether residents or non-residents of this state, to whom such property is disposed of or to whom any benefit therein accrues (hereinafter called 'the persons benefited') in accordance with the rules of apportionment herein set forth, and the persons benefited shall contribute the amounts apportioned against them
* * *

"(c) Unless otherwise provided in the will or non-testamentary instrument:

"(1) The tax shall be apportioned among the persons benefited in the proportion that the value of the property or interest received by each such person benefited bears to the total value of the property and interest received by all persons benefited, the values as finally determined in the respective tax proceedings being the values to be used as the basis for apportionment of the respective taxes."

EPTL 2-1.8 (subd [c], par [2]) provides for certain exemptions or deductions notwithstanding apportionment: "(2) Any exemption or deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent, the fact that the property consists of life insurance proceeds or the charitable purposes of the gift shall inure to the benefit of the person bearing such relationship or receiving such insurance proceeds or charitable gift, as the case may be."

In *Matter of Shubert* (10 NY2d 461), the Court of Appeals held that statutory apportionment is required absent a clear and unambiguous direction to the contrary in the will. The purported tax exoneration clause in *Matter of Shubert* (*supra,* p 466), contained the following language: " 'I direct that all estate, inheritance, succession, transfer or similar taxes on my estate passing under this WILL shall be paid out of my residuary estate.' " In *Matter of Shubert* (*supra*), the bulk of the estate, approximately $17,500,000, passed through the residuary to be divided into six equal shares. The residuary legatees contended that the exoneration clause was a clear direction against apportionment of taxes within the residuary.

The Court of Appeals, noting (*supra,* p 471) that "[t]here is a strong policy in favor of statutory apportionment", held that the claimed *Shubert* exoneration clause, which was similar to clauses considered in numerous other cases, did not amount to an unambiguous direction against intraresiduary apportionment. The clause amounted to "a general direction that all estate or inheritance taxes be paid out of the residue [which] is not the equivalent of a direction against proration within the residue itself nor a command

that taxes be treated as administration expenses" (*Matter of Shubert, supra,* p 471).

These principles were expounded upon by then Surrogate Sobel in *Matter of Olson* (77 Misc 2d 515). In that case, the testator bequeathed 55% of his residuary estate to family members and 45% to various charities. The purported tax exoneration clause was in the following language: " 'I direct that all estate, inheritance, succession and other taxes which may become due and payable by reason of my death, with respect to any and all property passing on my death either under this my Last Will and Testament or otherwise be paid out of my residuary estate' " (*Matter of Olson, supra,* p 517).

The court initially noted that the dispute only concerned the apportionment of taxes among the fractional dispositions within the residuary; it was undisputed that the estate taxes on preresiduary dispositions and on nontestamentary assets passing outside the will were exonerated and had to be paid " 'off the top' " of the residuary prior to the division of the residuary (*Matter of Olson, supra,* p 517). It further noted that since 1930, when section 124 of the former Decedent Estate Law became law, the statutory rule was that, unless there is a specific direction otherwise in the will, the burden of payment of estate taxes is on the recipient, not the residuary. The court then set forth a number of basic principles. First, if the will contains no tax exoneration provision, any disposition to a surviving spouse or a charity will receive the benefit of the estate tax deduction arising from that disposition (see US Code, tit 26, §§ 2055, 2056; Tax Law, § 955), by virtue of the express provision of EPTL 2-1.8 (subd [c], par [2]), which states that the marital deduction or charitable deduction shall inure to the benefit of the spouse or charity. Second, if the will exonerates only specified dispositions, a disposition to the spouse or a charity is nonetheless exonerated pursuant to the statute (EPTL 2-1.8, subd [c], par [2]). Third, a general tax exoneration provision directing that all estate taxes be paid out of the "residuary estate" or the "general estate" exonerates only preresiduary dispositions, the taxes on which must be deducted "off the top" of the residuary, which reduces the residuary estate. However,

such general provisions do not exonerate residuary dispositions or multiple intraresiduary dispositions. Statutory tax apportionment must be applied *within* the residuary. If the residuary includes a pecuniary disposition in a fixed sum to either a surviving spouse or a charity, or the disposition of a fractional residuary to such surviving spouse or charity, those dispositions are totally exonerated from the payment of taxes. The remaining nonexonerated intraresiduary dispositions must bear the burden of all of the estate taxes, including those on the exonerated preresiduary dispositions and the nonexonerted residuary dispositions.

Applying these principles to the case at bar, we conclude that Surrogate Brewster correctly determined that the language in article SEVENTH of the will, to wit, "[a]fter payment of all expenses, taxes, and specific bequests *as aforesaid*" (emphasis supplied) created an ambiguity as to the intention of the testatrix. The words "as aforesaid" are susceptible to two interpretations. They may mean that the residuary is to be distributed after payment of estate taxes on only preresiduary bequests and property distributed through the testatrix' *inter vivos* trust, or that all of the estate taxes, including the taxes imposed on the residuary, are to be paid out of the residuary prior to its distribution. Since these words are susceptible to two differing interpretations, there is an absence of a clear and unambiguous direction in the will against apportionment. Therefore, apportionment within the residuary pursuant to the statute is required (EPTL 2-1.8; *Matter of Shubert,* 10 NY2d 461, *supra; Matter of Olson, supra;* see, also, *Matter of Mills,* 189 Misc 136, affd 272 App Div 229). Moreover, since there is no clear and unambiguous direction against apportionment within the residuary, it is to be presumed that the testatrix intended that St. Agnes Hospital receive the maximum benefit afforded by way of the charitable deduction authorized by section 2055 of the Internal Revenue Code (US Code, tit 26, § 2055) and section 955 of the Tax Law in light of the strong public policy favoring the granting of full tax benefits, such as the marital deduction, the charitable deduction and the insurance deduction, as set forth in EPTL 2-1.8 (subd [c], par [2]) (see *Matter of Olson,* 77 Misc 2d 515, 518, 520, *supra*).

Thus, we conclude that the 70% share of the residuary estate devised to St. Agnes Hospital should be completely exonerated from the burden of estate taxes and the 30% share of the residuary estate devised to Dennis L. O'Connor must bear the burden of the taxes on both the preresiduary and the residuary bequests.

Moreover, we conclude that there not only is an ambiguity in the language of article SEVENTH of the will, but that there is also clear language within the exoneration clause that the testatrix intended to exonerate only preresiduary and *inter vivos* gifts. The latter part of article THIRD of the will states "that no portion thereof [of the estate taxes to be paid out of the residuary] shall be apportioned to or collected from the specific bequests contained in this Will or from distributions made from said trust". Conspicuously absent from this language, though, is any reference to a direction that taxes should not be apportioned against the residuary, thus indicating that the testatrix intended to exonerate only preresiduary bequests and distributions from her *inter vivos* trust — and not the residuary — from statutory apportionment. In *Matter of Pergament* (29 Misc 2d 334, 335, affd 19 AD2d 945) the testator's exoneration clause read as follows: " 'I direct and authorize my Executor or Executors to pay from my residuary estate any and all inheritance and other estate transfer taxes * * * that may be imposed or become chargeable against my gross taxable estate; or against any of the devisees or bequests herein, it being my intention that each and every devise and bequest under this will shall be delivered to and be taken by every devisee or legatee hereunder in full and without any deduction for any taxes.' " However, the testator also created an *inter vivos* trust, which he neglected to include within the tax exoneration clause. The court held that because the testator specifically defined and expressed his intent with respect to those persons who were to be exonerated from the payment of taxes, "he effected a controlling limitation on the general direction against apportionment which appears in the first part of the article" (*Matter of Pergament, supra,* p 336).

Similarly, in the case at bar, the testatrix defined and expressed her intent with respect to the property that was

to be exonerated from apportionment and the payment of taxes by specifically stating that no taxes were to be apportioned to or collected from the specific bequests or the *inter vivos* trust. By expressly stating her intent with respect to the classes of property to be exonerated from apportionment, the testatrix effected a controlling limitation on the general direction against apportionment which initially appears in article THIRD of the will. By not specifically including the residuary estate, she failed to exonerate it from apportionment.

Had the will explicitly provided for the deduction of estate taxes prior to distribution of the residuary estate, the residuary would have been exonerated from apportionment (see *Matter of Wise,* 20 AD2d 55, affd 15 NY2d 591; *Matter of James,* 189 Misc 24, affd 274 App Div 917, mot for lv to app den 274 App Div 927). The residuary would have also been exonerated had the will explicitly provided that estate taxes be paid as an administration expense (see *Matter of Cord,* 58 NY2d 539; *Matter of Bellinger,* 27 NY2d 873; *Matter of Cromwell,* 199 Misc 143, affd 278 App Div 649, affd 303 NY 681; *Matter of Olson,* 77 Misc 2d 515, 522, *supra*), or if the direction to pay estate taxes was contained in the same article of the will which directed the payment of debts and funeral and testamentary expenses (see *Matter of Moritz,* 48 Misc 2d 323). The will herein separates the direction to pay taxes, which is contained in article THIRD of the will, from the direction to pay all other expenses, which is contained in article SECOND of the will.

Petitioners' reliance on *Matter of Cohen* (30 Misc 2d 122) is misplaced. In *Matter of Cohen* (*supra,* p 123) article FIFTH of the will provided that " '[a]fter * * * the payment of all estate and inheritance taxes as hereinafter set forth * * * I direct my Executors and Trustees to divide my estate in two equal shares or parts. One of such shares or part I give * * * to my Executors and Trustees * * * for the following charitable * * * purposes' ". Article SIXTH of the *Cohen* will then disposed of the remainder of the estate. The tax exoneration clause was embodied in article TENTH of the *Cohen* will: " 'I direct that any all inheritance, estate * * * taxes levied * * * upon * * * my estate or any part thereof passing hereunder * * * be paid from the residuary of my

estate and that no part thereof shall be charged against any legatee, devisee or beneficiary other than those receiving the residuary of my estate' " (*Matter of Cohen, supra,* p 123). The court found that the use of the words " 'as hereinafter set forth' " in article FIFTH of the will, referred to the deduction of taxes from the gross estate provided for in article TENTH of the will and denoted the intent of the testatrix that estate taxes should be deducted *prior* to distribution of the residuary estate (*Matter of Cohen, supra,* pp 124-125). In the case at bar, however, no words such as "hereinafter set forth" are used. There is no indication in the will at bar that estate taxes are to be deducted prior to the distribution of the residuary. Moreover, the exoneration clause only exempts the preresiduary and *inter vivos* dispositions, not the residuary dispositions. Hence, *Matter of Cohen* (*supra*) has no application to this case.

*Matter of Kinderman* (21 NY2d 790) and *Matter of Jaret* (44 Misc 2d 262, affd 24 AD2d 479, affd 17 NY2d 450), also relied upon by petitioners, are not inconsistent with our determination. Both of these cases, unlike the instant case, involved the question of which of multiple residuary dispositions constituted the true residuary estate out of which estate taxes would be paid. Apportionment within the residuary was not at issue. Both courts held that estate taxes were payable out of the true residuary, rather than from certain specific bequests contained in the residuary.

The fact that the equality of a 70%-30% distribution of the residuary estate with the similar distribution of the *inter vivos* trust will be upset by apportionment provides no basis for dispensing with the statutory requirement. Although the testatrix made an express direction against apportionment with respect to the *inter vivos* trust, she failed to make such a direction with respect to the residuary. Provisions for equality of shares within the residuary estate do not amount to unambiguous directions against apportionment (see *Matter of Shubert,* 10 NY2d 461, 473, *supra,* citing *Matter of Williams,* 12 Misc 2d 136, 138; *Matter of Wahr,* 370 Pa 382, 387). Absent an express and unambiguous direction against apportionment within the residuary the testatrix "must be presumed to have intended 'gross equality' or equality prior to taxes, rather

than 'net equality' or equality after the tax impact" (*Matter of Shubert, supra,* p 473; see, also, *Matter of Miller,* 76 Misc 2d 1092, 1095). Since the testatrix failed to make a direction against apportionment within the residuary, the fact that she did make a direction against apportionment with respect to the *inter vivos* trust is irrelevant.

In sum, we conclude that the intermediate decree must be affirmed because the testatrix, by using ambiguous language in the residuary clause of her will, failed to make a clear direction against apportionment and because she failed to exonerate the residuary from apportionment in the exoneration clause of her will.

THOMPSON, J. P., RUBIN and BOYERS, JJ., concur.

Intermediate decree of the Surrogate's Court, Westchester County, dated January 28, 1983, affirmed, without costs or disbursements.