Albert GATES, Plaintiff,

v.

**PINNACLE COMMUNICATIONS COR-PORATION and Larry G. Shipp, individually, Defendants.**

No. 85 Civ. 760 (RLC).

United States District Court,
S.D. New York.

Oct. 15, 1985.

Leiby & Welsh, New York City, for plaintiff; Jeffrey Dale Welsh, Kenneth L. Leiby, Jr., of counsel.

Cole & Deitz, New York City, Marquis & Haney, Las Vegas, Nev., for defendants; Edward N. Meyer, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Albert Gates has filed a complaint alleging breach of contract and fraud arising from the negotiations involved in financing the purchase of radio station KMZQ–FM in Las Vegas, Nevada. The defendants, Pinnacle Communications Corporation ("Pinnacle"), a Nevada corporation, and Larry Shipp, Pinnacle's president and a Nevada citizen and resident, have moved to dismiss the complaint pursuant to Rule 12(b)(1), (2) and (3), F.R.Civ.P. Defendants claim lack of personal and subject matter jurisdiction as well as improper venue. In the alternative, defendants seek a transfer to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404.

On August 4, 1984, Gates, a citizen of Connecticut, discussed purchasing radio station KMZQ–FM during a telephone conversation with Shipp's agent, Richard Mack. Neither claims to have been in New York at the time. After this conversation, Gates sent $25,000 to the Karis Radio Corporation/Pargo Broadcasting ("Karis"), KMZQ–FM's seller. On August 8, Gates spoke by phone with Shipp. Again, neither party is asserted to have been in New York. That day, Gates sent $5,000 to Karis and arranged for an additional $20,000 to be sent.

Later that August Shipp travelled to New York on business unrelated to the purchase of KMZQ–FM. On August 30, Shipp met with Mack and Gates at the Grand Hyatt Hotel in New York City. For about an hour, they discussed financing the purchase of the radio station. Shipp asserts that this meeting was to explore possibilities of a loan or joint venture between him and Gates. Shipp Affidavit, ¶ 4. Gates's view of events is less clear: the complaint asserts that this meeting confirmed the terms of a joint venture between Shipp and Gates negotiated in the previous discussions (Complaint, ¶ 8); however, his affidavit in opposition to this motion asserts that the terms of the joint venture were "negotiated and agreed to" at the meeting. Gates Affidavit, ¶ 7. In any event, no written agreement emerged from the meeting. Plaintiff and defendant Shipp met socially in Washington, D.C. one month later, and again discussed arrangements to purchase KMZQ–FM.

Pinnacle was incorporated in Nevada on September 26, 1984, in order to purchase KMZQ–FM, which it now owns. Pinnacle employs Major Market Radio, Inc. ("Major Market") to procure national advertisers for KMZQ–FM's Nevada broadcasts. Major Market's offices are in New York City; during the period from November, 1984 to March, 1985, it provided less than $2,000 in gross billings to Pinnacle, or less than one per cent of KMZQ–FM's total billings.

## DISCUSSION

Under New York law, which is controlling on the issues dispositive of this motion, *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963) (en banc), there are two potential sources of jurisdiction over foreign corporations and individual non-domiciliaries such as these defendants: NYCPLR § 302 (McKinney 1972), which confers jurisdiction over specific causes of action arising from the defendant's behavior,[1] and the "doing business" test of *Tauza v. Susquehenna Coal Corp.*, 220 N.Y. 259, 115 N.E. 917 (1917), which confers general jurisdiction over foreign corporations that can be said to be "present" in New York. *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 430 (1964). Neither sustains the jurisdictional claims here. Plaintiff alleges only two contacts between the parties

---

1. The statute reads in relevant part:
   (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

   1. transacts any business within the state; or
   2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act. . . .

to this litigation and the State of New York: a single hourlong meeting in a Manhattan hotel room and a minor business relationship between Pinnacle and Major Market. Whether these contacts satisfy the "minimum contacts" requirements of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny is not at issue; they simply do not meet the requirements of New York law. *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 268, 209 N.E.2d 68, *cert. denied sub nom. Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

### A. Defendant Pinnacle

A foreign corporation that does not itself do business in New York may nonetheless be subjected to New York's jurisdiction if its agent does business in New York. *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967), *cert. denied* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). The entity or person present in New York must be an agent of the foreign corporation, and not merely an independent contractor. *Fordyce v. Round Hill Developments, Ltd.*, 585 F.2d 30 (2d Cir.1978). In *Frummer v. Hilton Hotels Int'l Inc.*, *supra*, the New York Court of Appeals defined the functional standard for demonstrating agency for purposes of the doing business test: whether "the [local agent] does all the business which [the foreign corporation] could do were it here by its own officials." *Id.*, 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851. As articulated by the Second Circuit in *Gelfand v. Tanner Motor Tours, Ltd.*, *supra*, there are two aspects to this test. The services of the local business must go "beyond 'mere solicitation'" and must be "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation would undertake to perform substantially similar services." *Id.* at 121.

The *Gelfand* court defines agency in part by looking at the breadth of powers conferred on the local business; the case held that a foreign corporation did business in New York where the local agent did not simply confirm bookings for the foreign corporation, but maintained a "broad range of services" for it. *Id.*

Aptly enough, the leading cases discussing the powers that a foreign corporation must confer to a local business before that business will be deemed its agent concern the travel industry. In *Frummer*, the defendant Hilton (U.K.) and the local contact, Hilton Reservation Service, shared a common owner. The reservation service did more than solicit clients for Hilton (U.K.)'s hotels; it accepted reservations and confirmed them. It also actively promoted Hilton (U.K.), leading the court to conclude that it did all that Hilton (U.K.) could do were it in New York. *Frummer* distinguished an earlier New York case, *Miller v. Surf Properties*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), which had held the activities of a local travel agency insufficient as a basis for jurisdiction over the foreign defendant because the travel agency could make, but not confirm, reservations. Two factors in *Frummer* led to the inference of agency there that the Court of Appeals had refused to make in *Miller*: power of the local travel agency to confirm reservations and common ownership of the hotel and travel agency.

Plaintiffs bear the burden of demonstrating that the court has personal jurisdiction over the defendants. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975). On the bare facts submitted, plaintiff has not demonstrated that Major Market possesses the powers requisite to the creation of an agency relationship for the purposes of conferring personal jurisdiction over Pinnacle upon this court. Plaintiff's complaint fails to mention Major Market at all; it baldly asserts that Pinnacle does business in New York through its agent, Krystal Radio. Gates later states that "more recent inquiry" reveals that it is Major Market that acts as

Pinnacle's agent and that Major Market "solicits, books and confirms radio spots" for Pinnacle. Gates Affidavit, ¶ 11. Shipp, Pinnacle's president, asserts that Major Market merely solicits national advertisers and cannot bind Pinnacle. Shipp Affidavit, ¶ 5. Without more convincing proof of Major Market's power to bind Pinnacle, or that the company provides Pinnacle the broad range of services that *Gelfand* demands, the court cannot find that Major Market is Pinnacle's agent. Plaintiff does not meet the first requirement of *Gelfand.*

Plaintiff also fails in re the second requirement of *Gelfand.* He fails to show that Major Market's services are so important to Pinnacle that, if Major Market did not provide them, Pinnacle would be forced to establish its own presence in New York to replace them. *Gelfand,* 385 F.2d at 121. Major Market provides only one per cent of KMZQ's advertising revenue. In *Gelfand,* the local travel agent provided the foreign tour operators with three-sevenths of their business on a particular tour,[2] totalling $120,000 per year. It is unlikely that Pinnacle would maintain a corporate presence in New York in order to replace services that generate less than $6,000 per year in revenue. Major Market's services for Pinnacle do not render the company subject to the court's jurisdiction.

■ Alternatively, plaintiff suggests that Shipp's August meeting in New York renders Pinnacle subject to New York jurisdiction under NYCPLR § 302(a)(1) or (a)(2). Pinnacle did not exist until nearly a month after that meeting. Plaintiff's argument that Pinnacle later ratified Shipp's actions at that meeting is not supported by any specific acts of Pinnacle that would constitute such ratification.

*B. Defendant Shipp*

■ Shipp's only contact with New York is his one hour-long meeting with Mack and Gates in a Manhattan hotel room.[3] Whether this meeting satisfies the "transaction of business" test of NYCPLR § 302(a)(1) turns on the "totality of circumstances" surrounding the agreement. *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir.1975). The radio station is in Nevada. Discussions took place by phone between parties in locations unknown (but presumably not in New York) and in person in Washington, D.C. as well as in New York. Thus, the "circumstances" surrounding this agreement are chiefly outside of New York. Of course, meetings attendant to the making of a contract may constitute a "transaction of business." In the leading New York case on this point, *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra,* that test was met where several negotiating sessions over a period of two months took place in New York. The Court of Appeals declined to say whether these meetings themselves would satisfy the requirements of NYCPLR § 302.[4] Absent other affiliating factors, a series of several negotiation sessions in New York has been held to be "transacting business." *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951 (2d Cir.1967).[5] However, a sole visit that is part of protracted negotiations does not satisfy § 302. In *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283

---

2. It is worth noting that in *Gelfand* as well as *Frummer,* the activities of the local agent were connected to the causes of action. The local travel service in both cases booked the arrangements for the trip on which plaintiff was injured. In this case, there is no connection between the solicitation of advertisers and the asserted breach of contract and fraud.

3. Although Shipp visited New York with some frequency on his former employer's behalf, Shipp Affidavit, ¶ 4, he himself was not "doing business" in the state. *Laufer v. Ostrow,* 55

N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982).

4. The Court in *Longines-Wittnauer* also relied upon the following additional contacts: the execution of a supplementary contract in New York and the partial performance of the original contract in New York. *Longines-Wittnauer,* 15 N.Y.2d at 457, 261 N.Y.S.2d 268, 209 N.E.2d 68.

5. One of the visits in *Liquid Carriers* was several days long; two were made for the sole purpose of negotiating the contract.

N.Y.S.2d 34, 229 N.E.2d 604 (1967), the defendant corporation's employee made one two-hour visit to New York during the course of a business trip to speak with the corporation's New Jersey and Pennsylvania representatives. "[T]he contacts here, rather than being minimal ... [are] infinitesmal...." *Id.* A single meeting in New York meets the requirements of NYCPLR § 302(a)(1) only where that meeting is the beginning and end of negotiations. In *Reiner v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), a single job interview in New York was "transacting business" where the interview resulted in an agreement covering all the substantive terms of the resulting employment contract.

Although the parties dispute what happened at the August 30 hotel meeting, it is clear that the meeting resembles that at issue in *McKee* more closely than that in *Reiner.* First, by plaintiff's own account the meeting was one of several. Second, plaintiff's complaint asserts that the meeting merely finalized previously agreed-to terms. Complaint, ¶ 8.[6] Such a meeting is an insufficient ground for exercising personal jurisdiction over Shipp. *See National Spinning Co. v. Talent Network, Inc.,* 481 F.Supp. 1243 (S.D.N.Y.1979).

 Finally, plaintiff argues that Shipp's meeting in New York constitutes a "tortious act within the state" under NYCPLR § 302(a)(2). The complaint fails to state the elements of fraud as to any representations made at that meeting. Gates had already disbursed all $50,000 at issue here prior to August 30. Even if any misrepresentations were made at that time, Gates has failed to assert the detrimental reliance that is one of the elements of fraud. W. Prosser, The Law of Torts 714 (4th ed. 1971).

Since we hold that the motion to dismiss must be granted on the ground of lack of personal jurisdiction, we need not address the arguments pertaining to subject matter jurisdiction and venue. Similarly, we need not address the alternative request for transfer to another district. The motion is granted and the complaint dismissed.

IT IS SO ORDERED.

---

**6.** As noted above, Gates's affidavit in opposition to this motion contradicts that assertion by claiming that this meeting established the substance of whatever agreement existed between him and Shipp. Although it is certainly appropriate for the court to consider sworn affidavits in ruling on a motion to dismiss for lack of personal jurisdiction, *see Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981), the contradiction between the pleadings and the motion papers militates against viewing the affidavit as determinative.